**Ramon R. RUFFIN, Plaintiff,**

v.

**Stan TAYLOR, Rick Kearney, Capt. Flaherty, C/O Beck, C/O Paolini, C/O Quillen, C/O Ament, C/O Stewert Townsend, CPL. Dave Elliot, Sgt. Mark Murphy, Sgt. Waishes, and Lt. Valerie Snead, Defendants.**

No. 97–284–RRM.

United States District Court, D. Delaware.

Sept. 26, 2001.

Ramon R. Ruffin, Smyrna, DE, pro se.

Ophelia M. Waters, Esquire, Department of Justice, State of Delaware, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a civil rights case. Plaintiff Ramon R. Ruffin is currently incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. At the time of the incident at issue in this suit, plaintiff was incarcerated at Sussex Correctional Institution ("SCI") in Georgetown, Delaware. Defendant Stanley Taylor is the commissioner of the Delaware Department of Corrections. Defendant Rick Kearney is the warden at SCI. Defendant Captain Flaherty is a watch commander at SCI. The remaining defendants are correctional officers at SCI.

On February 15, 1997, Ruffin filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, and certain state laws, when they chained his cell door, beat him during a cell extraction, denied him access to running water, and denied him medical treatment. On November 1, 2000, the defendants moved to dismiss or for summary judgment. This is the court's decision on the defendants' motion.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the complaint, amended complaint, and a grievance form that Ruffin filed with SCI. In considering a summary judgment motion, court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the court will restate the allegations made in the complaint and the evidence supporting those allegations must be reviewed in the light most favorable to Ruffin in determining whether the defendants are entitled to summary judgment.

At approximately 10:40 p.m. on February 14, 1997, defendants Snead, Elliot, Waishes, Townsend, Quillen, Paolini and Beck approached Ruffin's cell. Elliot attempted to put a chain and padlock around the door and frame of Ruffin's cell. When Ruffin inquired why Elliot was putting the chain and padlock on his cell, Elliot and Snead informed Ruffin that the warden ordered the chains as the result of a rumor that inmates could get out of their cells by manipulating the bolt latch. Ruffin was also told that he would not be permitted to a shower or take recess.

Ruffin protested, stating that it was unlawful to lock a secured door and that it constituted "a fire hazard, an endangerment of his and others welfare, and that it was against the Constitution." He then attempted to prevent Elliot from putting the chains on his door by wrapping his arms around the cell bars. The defendants then ordered a Quick Response Team ("QRT") to extract Ruffin from the cell. The QRT included defendants Townsend, Quillen, Paolini, and Waishes. When they entered the cell, Ruffin alleges they began to punch him in the face, head, and body. Quillen, Paolini, Waishes, and Beck placed handcuffs and leg shackles on him. Townsend punched Ruffin in the head and face, and stuck his right finger into his right eye. When Ruffin attempted to stand up, members of the QRT pinned him on the floor with their knees and feet while

Townsend kicked him in the groin, stomach, and ribs.

Members of the QRT then locked Ruffin in his cell, placing a chain and padlock around the bars of the door and frame. Ruffin stated that he was dizzy, he vomited, his head throbbed, his back and ribs hurt, and his hands and feet were numb from the blood circulation being cut off. He also complained of swelling, bleeding, and additional pain. Ruffin asserts that his requests for medical attention were denied. He also complained that he could not obtain running water in his cell and that he was denied access to his personal belongings, including his mattress, sheets, blanket, and towel. Many of Ruffin's allegations, as recited in his complaint, are restated in the supporting affidavit of Mark Gibson, another inmate of SCI at the time of the incident.

In support of their motion for summary judgment, the defendants have submitted incident reports from February 14, 1997 and the affidavits of various defendants. According to the affidavit of Warden Kearney, an inmate housed in Ruffin's area was severely beaten by inmates on February 11, 1997. Prison staff discovered that inmates were able to "jimmy the locks on their cell doors and move at will" around the unit. Warden Kearney explains that the chains and locks were a temporary measure to maintain security while the locks were being repaired or replaced. The affidavits of other corrections officers describe how Ruffin's refusal to permit Elliot to put a chain and lock on his cell door incited other inmates to cause a disruption on the unit. According to the affidavit of defendant Ament, for example, the "inmates then barricaded themselves on the tier of [the unit]." Once the QRT and a K-9 unit arrived at the unit, the inmates eventually voluntarily removed the barricade and left the unit. At that time, according to the affidavits, the QRT team attempted to enter Ruffin's cell, but he held the door closed. The QRT team then forcibly opened Ruffin's cell, "put him on the floor using the tactical QRT method," and placed him in handcuffs and shackles. The reports and affidavits of the officers state that minimal force was used and one incident report states that there were "no injuries to either side." Defendants have also submitted a medical report completed by Nurse Pamela Saunders on the date of the alleged attack. It describes Ruffin's injuries as follows: "Ruffin, Ramon had a pinpoint scratch to the bridge of his nose—noticed minimal swelling of both wrists and ankles and cuff marks to both. Full range of motion—Denies any other problems."

The defense also submitted a copy of a work order submitted on February 11, 1997 that states that there is no water in the cell alleged to be inhabited at the time by Ruffin and requesting repair "ASAP." The form indicates that the sinks in the area were repaired on April 29.

Following the incident, Ruffin immediately filed two grievance forms documenting the incident. In the grievance forms, both of which Ruffin attached to his complaint, he complains of both the use of excessive force on him on February 14, 1997 and the "dangerous living environment" created by the chains subsequently placed on the door of his cell. On March 3, 1997, Ruffin received a response to his grievance, which notified him that the Bureau of Prisons Inmate Grievance Procedure was not "the proper forum for resolving disciplinary disputes." Therefore, Ruffin's complaint was not "grievable." Instead, Ruffin was instructed to pursue an appeal through the prison's disciplinary system.

The day after the incident, February 15, 1997, Ruffin filled out a form complaint for actions proceeding under 42 U.S.C. § 1983. The action was filed in this court on June

2, 1997. The court granted Ruffin leave to proceed *in forma pauperis*. On August 19, 1997, Ruffin filed a motion for appointment of counsel. He also filed a motion to amend his complaint on September 10, 1997. In an order dated March 11, 1998, the court granted the motion for leave to amend the complaint, but denied the motion for appointment of counsel.

Ruffin's amended complaint alleges five claims. First, Ruffin alleges that defendants violated his Fourteenth Amendment right to due process of law when they chained him inside of his cell and when they beat him while he was handcuffed and shackled. Second, he alleges that defendants violated his Eighth and Fourteenth Amendment rights when they when they chained him inside of his cell, beat him while he was handcuffed and shackled, and denied him access to running water and medical treatment. Third, Ruffin alleges that defendants violated his Fourth and Fifth Amendment rights when they confiscated his personal hygiene materials, his clothing and bedding, and his legal pleadings. Fourth, he alleges that defendants violated Delaware law against assault and battery when they beat him while he was handcuffed and shackled and when they physically removed him from his cell. Fifth, Ruffin alleges that defendants violated Delaware law against conversion when they confiscated his personal property for a "lengthy period," and then returned the property damaged. In a later filing entitled "Civil Rights Complaint and Demand for Jury Trial," Ruffin summarily recites the facts alleged in his amended complaint and adds a sixth claim that he was denied his First Amendment right to freedom of speech.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the burden of establishing the absence of any genuine issue of material fact. Fed.R.Civ.P. 56(c). The moving party may satisfy this burden by demonstrating that there is an absence of evidence to support the case of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

After the movant meets this burden, the non-moving party may not rest upon the allegations or denials of its pleadings, but must, by affidavits or otherwise, set forth specific facts that indicate a genuine material issue for trial. Fed.R.Civ.P. 56(e). Summary judgment should be granted if the court finds, in consideration of all of the evidence, that no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Has Ruffin Failed to Exhaust the Available Grievance Procedure?*

The Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires that a prisoner may not bring a suit, after April 26, 1996, to challenge his conditions of confinement until "administrative remedies are exhausted." 42 U.S.C. § 1997e(a). The allegation

of excessive force by corrections officers is a challenge to the conditions of confinement for which exhaustion of administrative remedies is necessary. *Booth v. Churner*, 206 F.3d 289, 298 (3d Cir.2000), *aff'd*, 532 U.S. 731, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). The defendants argue that Ruffin's claims must be dismissed because he has not exhausted grievance procedures available to him at SCI. *See id.*, 121 S.Ct. at 1825 (holding that a grievance procedure must be exhausted even if it is futile because it would not provide every remedy sought).

Ruffin did use the prison grievance procedure available to him by filing two grievances, numbered 97065 and 97066, each dated February 14, 1997 and marked as received by the SCI Grievance Chairperson, Staff Lieutenant Brenda Brasure, on February 18, 1997. The first grievance complains of the alleged excessive force and his resulting medical condition. The second grievance focuses more particularly on the fact that chains were placed on his cell door. The Chairperson responded in a letter dated March 3, 1997, stating that the grievance procedure was "NOT the proper forum for resolving disciplinary disputes." [1] Instead, Ruffin was referred to the Corrections Code for Penal Discipline and was told that it had its own appeal process. No further explanation is provided by the defendants explaining why the grievance was characterized as a "disciplinary dispute."

Given these circumstances, Ruffin did exhaust the procedures available to him under the prison grievance procedure. The SCI Grievance Chairperson's letter

clearly announces that his complaints are not "grievable" and that "[d]isputes such as this" should be resolved under the Corrections Code of Penal Discipline. Thus, the prison grievance system proved entirely futile because it provided no remedy for his complaints. Instead, he was referred to the Corrections Code of Penal Discipline, a system of institutional rules and a hearing process for inmates charged with committing infractions of the institution's rules. *See* Department of Correction Policy Manual, Chapter 4.2 ("Inmate Disciplinary Hearing"). Neither party has submitted evidence that Ruffin was charged with or punished under any institution rule or that he was the subject of any disciplinary action relating to the events of February 14, 1997. The state has not alleged how the institution's disciplinary procedure could provide Ruffin with any "administrative remedy" for his claims and therefore satisfy 42 U.S.C. § 1997e(a). While exhaustion generally requires a plaintiff to appeal an adverse determination of his claim, *See Booth*, 121 S.Ct. at 1822 (noting the plaintiff filed a grievance, but did not appeal following the denial of relief), in this case the letter from the SCI Grievance Chairperson makes it clear that an appeal of his grievance would not be considered. Thus, Ruffin did exhaust his administrative remedy with respect to those claims discussed in his two grievance forms. Therefore, claims relating to the alleged assault of him by the QRT, the lack of subsequent medical care, and the placement of chains on his cell, will not be dismissed for failing to exhaust the prison grievance procedure.

1. The complete text of the letter states:
I have reviewed your grievance dated February 14, 1997 # 97065 and # 97066 concerning the disciplinary action taken. Be advised that the Bureau of Prisons "Inmate Grievance Procedure" as outlined in Procedure 4.4 is NOT the proper forum for resolving disciplinary disputes. Therefore this issue is not grievable under these guidelines.
Please note, the Corrections Code of Penal Discipline has its own appeal process. Disputes such as this should be addressed to that authority under its guidelines for resolution.

■ Ruffin has presented no evidence, however, that he brought a grievance with respect to several of the other claims alleged in this action. He has presented no evidence that he submitted a grievance form seeking an administrative remedy for the alleged taking of his personal property in violation of the Eighth, Fourteenth, Fourth and Fifth Amendments. Nor is there evidence of a grievance protesting the lack of running water in his cell in violation of the Eighth and Fourteenth Amendments. Last, there is no evidence Ruffin presented a grievance form for his claim that the defendants denied him his right to freedom of speech under the First Amendment or that he was denied access to running water. Therefore, those claims will be dismissed pursuant to 42 U.S.C. § 1997e(a).

### C. Can Ruffin Establish an Eighth Amendment Violation?

1. *Are the Defendants entitled to Summary Judgment on the Claims of Excessive Force?*

■ The defendants present two arguments in support of their request for summary judgment on Ruffin's claims on excessive force. First, they urge the court to grant summary judgment because Ruffin has not shown more than *de minimus* injuries resulted from the alleged force. The defendants point to Nurse Saunders medical report as evidence that his injuries were minimal. It describes his injuries as follows: "Ruffin, Ramon had a pinpoint scratch to the bridge of his nose—noticed minimal swelling of both wrists and ankles and cuff marks to both. Full range of motion—Denies any other problems."

■ The Third Circuit has held that summary judgment in excessive force[2] claims should not be granted on the sole basis that the plaintiff's injuries are *de minimus* in character. "Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows)." *Brooks v. Kyler,* 204 F.3d 102, 108 (3d Cir.2000). "[T]he Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual *force* that results in sufficient *injury."* *Id.* The proper inquiry in excessive force claims is not the severity of the injury caused, but the amount of force used and its justification. Thus, the defendants are not entitled to summary judgment on the basis that Ruffin injuries were *de minimus,* but such evidence could support an inference that the force used against Ruffin was not cruel or unusual in its extent.

The defendants also argue that they are entitled to summary judgment because their use of force in subduing Ruffin was justified as a good faith effort to restore discipline within the prison. The Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 321–22, 106 S.Ct. 1078, 89 L.Ed.2d 251

---

**2.** Ruffin's complaint mentions both the Eighth and Fourteenth Amendment in tandem with respect to each of his claims for relief, including both excessive force and inadequate medical care. The court will construe these claims as separate grounds for relief, except

insofar as the protections of the Eighth Amendment have been made applicable to the states under the Fourteenth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 101, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

(1986)). Under this standard, the defendants argue, the evidence overwhelmingly supports that the QRT used force on Ruffin for legitimate purposes. Because Ruffin prevented them from placing the chain and lock on his cell door and then held the door closed when they attempted to enter, the QRT team was not maliciously causing harm but remedying the threat Ruffin posed to the security of the facility and ending the disruption he caused in the unit.

■ The Supreme Court has detailed a number of factors to apply in determining whether the use of force by corrections officers is in violation of the Eighth Amendment. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (citation omitted). Among the evidentiary considerations is the amount of injury caused to the plaintiff. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' " *Id.* (citation omitted). Thus, the minimal nature of Ruffin's injuries do support the defendant's second argument that they are entitled to summary judgment on the excessive force claim.

Considering that Ruffin's injuries were relatively minimal and the other factors outlined in *Hudson,* Ruffin has not shown that he can survive summary judgment on his excessive force claim because he admits the basic facts relating to the disturbance he caused on the unit and his resistance to the QRT's forcible extraction of him from his cell. He admits in his complaint that he "wrapp[ed] his arms around [the] cell bars, blocking defendant Elliot from putting chains on [the] door." The supporting affidavit of Mark Gibson, an inmate of SCI, Ruffin's complaint, and affidavits of the QRT members all confirm the events of the next few minutes. According to Gibson, inmates of the unit "barricaded the door" until the QRT and a K–9 unit arrived. After those inmates disbursed, Ruffin continued to block the placement of a chain on the bars of his cell and hold the door of his cell closed. Once the QRT entered the cell, "Ruffin struggled not to let them pull him out by grabbing the bars in front of the cell," according to Gibson.

Ruffin does not dispute these facts. He admits in his brief that the QRT's attempt to remove him from his cell consisted of "pulling plaintiff's arms from bars, punching plaintiff in the face, and banging plaintiff's arms to make him release bars." His complaint admits that the QRT repeatedly struck him while attempting to place handcuffs and leg shackles on him. His complaint of excessive force, however, is unsubstantiated. "Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir.1993). In fact, the medical evidence submitted by the defendants indicate that his injuries were minor and related to the placement of handcuffs and leg shackles on his limbs.

In sum, Ruffin has not presented evidence that would establish an issue of material fact on whether the QRT acted to "maliciously and sadistically cause harm" to him. *Hudson,* 503 U.S. at 7, 112 S.Ct. 995. Instead, the uncontroverted evidence

establishes that Ruffin both verbally defied and physically resisted the officers throughout the encounter. Thus, a reasonable factfinder would conclude that the actions of the officers were "a good-faith effort to maintain or restore discipline" and were not cruel and unusual punishment. *Id.* at 7, 112 S.Ct. 995. Ruffin has not shown that this issue "may reasonably be resolved in favor of either party,"and the defendants are entitled to summary judgment. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

2. *Are the Defendants entitled to Summary Judgment on the Claims of Inadequate Medical Treatment?*

 Ruffin alleges in his complaint that he was denied medical treatment in violation of his Eighth Amendment rights. "The two-pronged ... test for a cognizable claim under a civil rights statute because of inadequate medical care in prison requires that there be deliberate indifference on the part of prison officials and that the prisoner's medical needs be serious." *Government of the Virgin Islands v. Martinez,* 239 F.3d 293, 302 (2001) (citing *Estelle v. Gamble,* 429 U.S. 97, 102–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Ruffin has proffered no evidentiary support that support either of these prongs. Other than the allegations made in Ruffin's complaint, the only evidence presented on the issue is the medical report completed by Nurse Saunders and dated February 14, 1997, the day of the alleged excessive force. That report is corroborated by several incident reports which list only minor injuries to Ruffin and note that Nurse Saunders was at the scene.

In his brief to this court, Ruffin alleges that Nurse Sanders never examined him and that he experienced more severe injuries than characterized in her report. He also appears to aver, however, that Nurse Saunders' examination was incomplete. The only evidence in support of either

allegation is that the incident report of defendant Elliott confirms that Ruffin was seen by Nurse Saunders and notes, among other observations, a lump on Ruffin's left eye. This evidence does not support Ruffin's allegation of inadequate medical care. Instead, it confirms that Ruffin did receive a medical evaluation from Nurse Saunders promptly following the incident and that his injuries were not serious. Thus, Ruffin's evidence is insufficient to support his allegation that the defendants were deliberately indifferent to his serious medical needs and summary judgment will be granted to the defendants. *Singletary v. Pennsylvania Dep't of Corrections,* 266 F.3d 186, 193 n. 2 (3rd Cir.2001) (unsupported allegations of deliberate indifference are insufficient to survive summary judgment).

D. *Can Ruffin Establish a Fourteenth Amendment Violation?*

 Ruffin claims that the placement of a lock and chains on his cell door was in violation of his right to due process protected by the Fourteenth Amendment. He argues that the placement of the chains caused an unsafe condition within the prison. Summary judgment is appropriate on this claim because Ruffin does not present a genuine issue of material fact. Ruffin and the defendants recount that Ruffin's disturbance was precipitated by his protests to the placement of a lock and chain on his cell door. All parties agree that a lock and chain was placed on his cell door following the altercation between Ruffin and the QRT.

To succeed on his claim, Ruffin must first show that he has a protected interest before proceeding to the adequacy of the process by which he was deprived of that interest. The Supreme Court has defined protected interests as the freedom from restraint which "imposes atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Under this standard, Ruffin cannot show a protected interest because the placement of a lock and chain on his cell door, regardless of whether the lock built-in to his cell door was operational, does not impose an "atypical and significant" hardship on him. All cells have locked doors and the fact that Ruffin's cell may have been locked in an unconventional manner "does not present a dramatic departure from the basic conditions" of his incarceration. *Sandin,* 515 U.S. at 485, 115 S.Ct. 2293 (placement of an inmate in administrative segregation does not implicate a protected interest). Thus, Ruffin's claims under the due process clause fail because he has not been deprived of an interest protected by the Fourteenth Amendment. Summary judgment will therefore be granted to the defendants on this claim.

## III. *CONCLUSION*

For the foregoing reasons, the defendants' motion for summary judgment with respect to Ruffin's claims under 42 U.S.C. § 1983 will be granted. Ruffin's remaining claims request relief pursuant to state law, including allegations that the defendants committed an assault and battery on him on February 14, 1997 and unlawfully converted his personal property. Because the court will grant summary judgment on Ruffin's federal claims, the court will dismiss his pendent state law claims for lack of jurisdiction. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The court will issue an order in accordance with this memorandum opinion.

## *ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

For the reasons set out in the court's September 26, 2001 memorandum opinion,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docket Item 43) is hereby granted.