

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-18-2000

# Brooks v. Kyler

Precedential or Non-Precedential:

Docket 98-7626

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Brooks v. Kyler" (2000). *2000 Decisions.* Paper 31.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/31

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 18, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-7626

ALAN T. BROOKS,
      Appellant,

v.

KYLER, Superintendent; PORTERFIELD, Sgt.; RUPINSKI,
C.O.; ALL DEFENDANTS ARE BEING SUED IN THEIR
OFFICIAL AND INDIVIDUAL CAPACITY, C.O.

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 95-cv-00448)
District Judge: Honorable Edwin M. Kosik

Submitted Under Third Circuit LAR 34.1(a)
September 27, 1999

Before: BECKER, Chief Judge, MCKEE and COWEN,
Circuit Judges

(Filed February 18, 2000)

        ALAN T. BROOKS,
        Appellant Pro Se
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426


        D. MICHAEL FISHER, ESQUIRE
        Attorney General
        HOWARD G. HOPKIRK, ESQUIRE
        Deputy Attorney General
        CALVIN R. KOONS, ESQUIRE
        Senior Deputy Attorney General
        JOHN G. KNORR, III, ESQUIRE
        Chief Deputy Attorney General
        Chief Appellate Litigation Section
        Office of the Attorney General
        15th Floor, Strawberry Square
        Harrisburg, PA 17120

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

Appellant Alan T. Brooks, a Pennsylvania state prisoner, brought this suit under 42 U.S.C. S 1983 against four prison officials, claiming, among other things, that they violated his right under the Eighth Amendment to be free from cruel and unusual punishment. Brooks has appealed the District Court's final order granting summary judgment in favor of the defendants. The appeal presents the question whether a prisoner who testifies that he was violently beaten by three prison guards, but who adduces no objective evidence of anything but de minimis injuries, may survive a summary judgment motion on his Eighth Amendment claim. We conclude that he may, and hence we reverse. In so doing, we look to Hudson v. McMillian, 503 U.S. 1 (1992), in which the Supreme Court concluded that proof of significant injury was not an independent requirement for an Eighth Amendment claim of excessive and wanton force. Following Hudson's focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any Eighth Amendment analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force.

2

I.

In May, 1994, Brooks was confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI-Camp Hill). Defendants, Superintendent Kenneth Kyler, Sergeant Russell Porterfield, Correctional Officer Michael Rupinski, and Correctional Officer Gerald Devlin were assigned to SCI-Camp Hill during the time in question.1 Brooks contends that on the evening of May 5, 1994, Officers Devlin and Rupinski and Sergeant Porterfield physically assaulted him while he was attempting to complete an authorized phone call. The facts adduced by Brooks in opposition to the defendants' motion for summary judgment are as follows.

According to Brooks, before the assault took place, Devlin and Rupinski came to his cell in the isolation confinement unit and told him that he had been approved for a legal phone call. They then handcuffed him to a waist restraint belt and conducted a pat down search. After being escorted to another cell, Brooks placed his call. Approximately ten minutes later, Devlin told Brooks to terminate his conversation. Brooks maintains that he acknowledged the directive but that less than a minute after Devlin issued his

order, and while he was in the process of hanging up, Sergeant Porterfield pushed Devlin aside, ran into the cell, and pushed down the telephone receiver.

When Brooks turned and asked Devlin what was happening, Porterfield is said to have struck the right side of Brooks's head with his fist, and then to have continued with more punches. Brooks, still handcuffed to the waist restraint belt, fell face down as Porterfield allegedly continued to punch him in the head while Devlin and Rupinski stomped on his back and neck. As Porterfield continued punching him in the back of the head, Brooks represents that he went "unconscious semi-conscious," and that several minutes later, Rupinski placed him in leg shackles. According to Brooks, he was then raised about four feet from the floor by the leg shackles' chains and

_____

1. Although Devlin's name does not appear in the caption, he was a defendant in the District Court, and summary judgment was granted in his favor.

3

waist restraint belt, and slammed into a cell wall. At that point, Porterfield allegedly began choking Brooks with both hands, nearly rendering Brooks unconscious. As he was choking Brooks, Porterfield is said to have threatened to kill Brooks and to have told him that "no one will ever find out." Finally, Brooks alleges that, after the attack, the officers transported him back to his cell where he was subjected to further physical and verbal abuse prior to being unshackled.

As a result of the alleged attack, Brooks suffered injuries including abrasions (or "scratches" as the defendants call them) on his neck and hands. When the assault ended, Brooks requested to see the shift commander and to receive medical treatment. A nurse arrived five minutes later and gave Brooks his daily medication for a previously diagnosed condition of high blood pressure. The officer accompanying the nurse told Brooks to file a grievance. Brooks claims that shortly thereafter he, as well as other inmates, saw Devlin, Rupinski and Porterfield congregating with a lieutenant in what appeared to be an attempt to cover up the assault. When the lieutenant passed Brooks's cell roughly thirty minutes later, Brooks told him what had happened. The lieutenant allegedly told Brooks that he did not believe him and walked away. When the shift changed, Brooks, upon his request, was examined and treated by a physician and, the following day, received various pain medications. Brooks maintains that his blood pressure remained very high for two to three weeks after the alleged assault.2

Brooks also alleges that he was given medication for anxiety, stress, and depression as a result of being attacked.3

_____

2. Defendants have submitted the declaration of SCI-Huntingdon Medical Records Technician Sharon Wolfe to the effect that Brooks's institutional medical records show that: Brooks's blood pressure was not checked on the date of the incident contrary to Brooks's allegations; Brooks had a history of high blood pressure; and Brooks was prescribed Vistaril on March 29, 1994, prior to the events at issue. See Appellees' Appendix at SA-69, PP 11-14. Given summary judgment posture, we construe this disputed fact in the light most favorable to plaintiff.
3. Brooks apparently contacted Superintendent Kyler and filed a grievance. Two in-house investigations were conducted and Brooks was cited for misconduct against Porterfield and for failing to obey an order. After a hearing, Brooks was found guilty of both charges and was sanctioned to 140 days in solitary confinement.

4

Based on the described events, Brooks commenced this pro se action claiming, among other things, that the defendants' actions violated the Eighth Amendment's prohibition against the use of excessive force. 4 The defendants filed an answer denying the allegations of the complaint and, after discovery, moved for summary judgment. Brooks responded to the motion by submitting an affidavit setting forth his version of the events and arguing that he had been provided with inadequate discovery. The District Court found that Brooks's claims of being violently beaten by three correctional officers were unsupported by the medical evidence:

> Although there are material facts in dispute regarding the underlying cause and events at issue, it is apparent that the type of vicious, prolonged attack alleged by Brooks would have resulted in far greater injuries than those which he indisputably sustained.

Accordingly, the Court entered an order granting summary judgment in favor of the defendants. Brooks now appeals. The District Court had jurisdiction under 28 U.S.C.

_____

4. Brooks also alleges that the defendants were deliberately indifferent to

his medical needs, that his due process rights were violated, that his request to file criminal charges against correctional officers was improperly denied, and that he was provided insufficient discovery. We agree with the District Court that Brooks cannot survive summary judgment as to these claims. Although a deliberate failure to provide medical treatment motivated by non-medical factors can present a

constitutional claim, see Durmer v. O'Carroll , 991 F.2d 64, 67 (3d Cir. 1993), in this case, it is uncontroverted that a nurse passing out medications looked at Brooks's injuries within minutes of the alleged beating, and that Brooks was treated by prison medical staff on the same day. Moreover, he presented no evidence of any harm resulting from a delay in medical treatment. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."). There was no evidence that the officers who did not immediately grant his request for a doctor thought that Brooks needed immediate medical treatment, or that the temporary denial "expose[d] the inmate `to undue suffering or the threat of tangible residual injury.' " Monmouth Cty. Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

5

SS 1331, 1343. We have jurisdiction under 28 U.S.C. S 1291. We set forth the familiar standard of review in the margin.5

II.

A.

After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. See Whitley v. Albers, 475 U.S. 312, 327 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322; see also Sampley v. Ruettgers, 704 F.2d 491, 495 (10th Cir. 1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of

_____

5. We exercise plenary review over a District Court's grant of summary judgment and review the facts in the light most favorable to the party against whom summary judgment was entered. See Coolspring Stone

Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See F.R.C.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (citations omitted).

In support of their motion for summary judgment, the defendants maintain that they employed only the minimal force necessary to protect their safety and institutional security, as we describe in the margin.6  They also rely on two internal investigations which concluded that Brooks's claims of excessive force were unfounded. See Appellees' Appendix at SA-88-9, PP 4-7. On this evidence, the defendants assert that they are entitled to summary judgment. While these considerations support the defendants' position, and might well lead to the defendants' verdict at trial, they are controverted by facts adduced by Brooks. If Brooks is believed, while the application of some force may have been needed to reign in Brooks's apparently overtime telephone call, he was shackled at the time so that the extent of his threat to staff would not have been great.

What the appeal turns on then, under the Whitley factors, is the defendants' third argument that the medical evidence in the record does not support Brooks's allegation that he was violently beaten. They contend that Brooks's visible injuries, which include a few scratches to his neck and wrists, were de minimis and create a presumption that the force used against him was inadequate to state an Eighth Amendment claim:

_____

6. In his declaration, Porterfield states that after Brooks ignored three orders to hang up the telephone, Porterfield entered the cell and terminated the conversation. See Appellees' Appendix at SA-59-60, PP 3-9. Thereafter, Porterfield contends, Brooks threw the phone against the wall, spun around, and grabbed Porterfield's shirt. See id. at P 10. With the assistance of Devlin and Rupinski, Porterfield states that he then restrained Brooks and shackled Brooks's legs. See id. at P 11. Finally, Porterfield denies each of Brooks's allegations of verbal and physical abuse, adding that Brooks remained conscious throughout the entire

incident and was issued a misconduct for assault and refusing to obey an order. See id. at PP 16-26. Devlin and Rupinski also deny Brooks's allegations of excessive physical abuse and substantiate the version of events Porterfield set forth in his sworn declaration.

> [T]he undisputed medical evidence shows that the only injuries which Brooks had were a few scratches to his neck and hands. Even assuming that the corrections officials were not justified in using force against Brooks, he has failed to present any medical evidence which would demonstrate that he sustained anything more than de minimis injuries.

(Brief of Appellees, p. 20).

B.

The Supreme Court case most on point is Hudson v. McMillian. In Hudson, an inmate sued after an alleged assault in which he suffered minor bruises and swelling of his face, mouth, and lip, as well as a cracked dental plate. See 503 U.S. 1, 4 (1992). The defendants in that case argued that these injuries were "minor" and therefore could not be redressed through an Eighth Amendment suit, but the Court insisted that "[t]he dissent's theory that . . . an inmate who alleges excessive use of force [must] show serious injury in addition to the unnecessary and wanton infliction of pain misapplies Wilson and ignores the body of our Eighth Amendment jurisprudence." Id. at 10. Therefore, Hudson primarily stands for the proposition that a showing of "significant" or "serious" injury is not necessary to make an Eighth Amendment claim. Id. at 8.

Hudson dictates that we must assess the degree of force employed in relation to the apparent need for it. In discussing this balance the Court used language indicating that de minimis force may, in extreme instances, violate the Eighth Amendment. The statement in Hudson that there is no constitutional violation for "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," id. at 9-10 (citations omitted), counsels that, where the force is "repugnant to the conscience of mankind," even a de minimis use of force could be constitutionally significant.

We need not now resolve whether de minimis force would support a constitutional claim in this case, however, because Brooks's allegations rise far above the de minimis level. Three correctional officers allegedly assaulted Brooks

by repeatedly punching him in the head, stomping on his back and neck, slamming him into a wall, choking him, threatening him, and nearly rendering him unconscious -- all while he was handcuffed to a waist restraint belt and, at some points, even restrained by leg shackles -- simply because he did not promptly respond to an order to end a phone call. If a jury believes Brooks's version of the facts, there is no question that the defendants' use of force was excessive in light of the circumstances confronting them.

C.

The defendants claim that Brooks' evidence does not support his claim, and that we cannot rely on his declarations because there is a requirement of objective or independent proof of something more than de minimis injury in order to state this kind of Eighth Amendment claim. The absence of medical evidence supporting Brooks's allegations of being violently beaten is conclusive proof, they submit, that the force used was de minimis by constitutional standards. In granting summary judgment in favor of the defendants, the District Court endorsed this view. The Court's conclusion finds support in an opinion of the Court of Appeals for the Fourth Circuit, which decided in a similar case (but with less egregious allegations) that evidence of only de minimis injury provided"conclusive evidence" that only de minimis force was used. Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc). Focusing on the following passage in Hudson:

> The blows directed at Hudson . . . are not de minimis for Eighth Amendment purposes. The extent of Hudson's injuries thus provides no basis for dismissal . . . .

Id. at 1262 (quoting Hudson, 503 U.S. at 10), the Norman court concluded that the conjunction of these sentences negatively implied that certain injuries could be so insignificant as to warrant dismissal.

We disagree. Although the Norman reading is plausible, drawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory. We find the better reading of these

sentences to be the more straightforward one, drawn from the general teaching of Hudson: i.e., the absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and

unnecessary use of force against a prisoner. Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows). "[T]he constitutional touchstone is whether punishment is cruel and unusual." Hudson, 503 U.S. at 11 (emphasis added).

We acknowledge that Hudson itself leaves open the possibility that there is some minimum amount of injury required to make a wanton infliction of force claim. However, a thorough probe of the Hudson opinion indicates that the absence of proof of minor or significant injury should not mandate dismissal. As we read the opinion, the Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual force that results in sufficient injury. In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was "harmful enough" (because contemporary standards of decency do not require that the government give succor to the medical and maintenance needs of inmates), the latter kind of claim has no such requirement:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Id. at 9.

Requiring objective or independent proof of minor or significant injury, would ignore this teaching and place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment. See Moore v.

10

Holbrook, 2 F.3d 697, 700 (6th Cir. 1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim."). But see Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999) ("[T]o support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury."). This is not to say, as the Hudson court observed, that the degree of resulting injury is not highly relevant to the determination of the unreasonableness of the force used; rather, it merely says that the absence of objective

proof of non-de minimis injury does not alone warrant dismissal. If we were to adopt the District Court's reasoning, a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible (or palpable or diagnosable) injuries that were de minimis. 7

D.

In sum, in light of Hudson, the District Court's ruling cannot stand. The defendants' acts are not shielded from constitutional scrutiny simply because Brooks did not proffer objective evidence of more than de minimis injuries.

_____

7. In his concurring opinion in Hudson, Justice Blackmun observed that requiring significant (i.e., externally observable) injury would not

        constrain prison officials from lashing prisoners with leather
straps,
        whipping them with rubber hoses, beating them with naked fists,
        shocking them with electric currents, asphyxiating them short of
        death, intentionally exposing them to undue heat or cold, or
forcibly
        injecting them with psychosis-inducing drugs.

Hudson, 503 U.S. at 14 (Blackmun, J., concurring in the judgment).

We note in this regard that Brooks cannot seek independent medical advice from a specialist or his personal physician to corroborate his allegations regarding his injuries (or that he suffered from high blood pressure as a result of the attack, see supra n.2). Therefore, when courts do focus on the injury, it is important that they recognize that "an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate `record evidence' on his behalf. . . [u]nder these circumstances, his affidavits . . . are about the best that can be expected

from him [at the summary judgment phase of] the proceedings." Norman v. Taylor, 25 F.3d 1259, 1265 (4th Cir. 1994) (Hall, J., dissenting).

11

We have, throughout the opinion, used the language of de minimis, minor, and significant injury as if there were such categories, because the problem presented to us by the District Court, the Fourth Circuit's opinion in Norman, and the defendants, required us to respond to their effort to make such delineations. However, we do not deem these differences constitutionally significant; rather, an essential aspect of our holding is that a plaintiff 's claim does not turn on these definitions.

Therefore, our opinion should not be read to conclude that the superficial lacerations and abrasions that Brooks indisputably suffered were de minimis or minor. Regardless of the category of the injury, Brooks adduced evidence of the use of wanton, unnecessary force resulting in severe pain. This creates a disputed issue of material fact for the trier of fact to resolve. Accepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm. See Hudson, 503 U.S. at 7. On this record, we cannot say as a matter of law, viewing the facts in the light most favorable to Brooks, that excessive force was not used. Accordingly, it was improper to grant summary judgment on this claim.

We will reverse the District Court's judgment with respect to the Eighth Amendment excessive force claim and remand the case for further proceedings consistent with this opinion. In all other respects, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

12