

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2002

# Reyes v. Chinnici

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2142

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Reyes v. Chinnici" (2002). *2002 Decisions.* Paper 748.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/748

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-2142

LUIS REYES,
                              Appellant
v.

CORRECTIONS OFFICER JOHN CHINNICI

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Court Judge: The Honorable R. Barclay Surrick
(D.C. Civ. No. 98-cv-6615)

Argued on October 29, 2002

Before: SLOVITER, FUENTES, and DEBEVOISE*, Circuit Judges

(Opinion Filed: November 18, 2002)

OPINION OF THE COURT

_____

*Honorable Dickinson R. Debevoise, United States District Judge for the District
of New Jersey, sitting by designation.

FUENTES, Circuit Judge:

Luis Reyes ("Reyes") appeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), to Defendant Corrections Officer John Chinnici ("Chinnici"). Reyes contends that the District Court improperly granted summary judgment on his claim under 42 U.S.C. § 1983 by focusing on his de minimis injuries and failing to permit a jury to decide the matter. Because we agree that no reasonable jury could find for Reyes based on the facts of this case, we affirm the Order of the District Court.

## I. Facts and Procedural History

Because we write solely for the parties, our review of the factual background is limited to that which is necessary to inform our opinion today. At the time of the incident at issue, Reyes was a prisoner in the Behavioral Adjustment Unit ("BAU") in the disciplinary block of the Berks County Jail, the most restricted unit in the jail. Prisoners in the BAU spend 23 hours a day in single occupancy cells and exercise for one hour a day in the prison yard. For the safety of corrections officers and prisoners, BAU prisoners are handcuffed from behind whenever corrections officers move them outside of their cells.

In addition to being housed in the BAU, Reyes was classified as "security status" because he and his brother, another prisoner in the jail, had assaulted a corrections officer as part of an escape attempt. Due to his security status, prison officials required Reyes to exercise alone and prevented him from having any "sharps," including pens. In addition, two

2

corrections officers accompanied Reyes whenever he went out of his cell, and corrections officers searched his cell daily for weapons. On the day of the incident at issue, Chinnici and Corrections Officers Jason Bao ("Bao") and Edwin Cordero ("Cordero") conducted a search of Reyes' cell. Cordero performed a strip search of Reyes in a shower stall, while Bao and Chinnici checked his cell.

After the search, the corrections officers accompanied Reyes back to his cell. For reasons that remain disputed, Chinnici previously had told Reyes that, if Reyes spit on him, he was "going down." Upon arrival at his cell, Reyes turned toward Chinnici and pursed his lips as if to spit on him. In response, Chinnici struck Reyes' right shoulder. Reyes claims that Chinnici punched him, while Chinnici and Bao claim that Chinnici made contact with an open hand. Reyes never actually spit on Chinnici.

After the incident, Cordero grabbed Reyes and put him back in his cell. Reyes' shoulder swelled as a result of the blow. He requested medical attention and saw the prison nurse. The nurse looked at his shoulder, told him it would be sore for a few days, and gave him two pills to take.

Reyes later commenced this action under 42 U.S.C. § 1983 alleging the Chinnici used excessive force against him in violation of his constitutional rights. On April 12, 2001, the District Court granted summary judgment to Chinnici, concluding that he did not violate Reyes' Eighth Amendment right to be free from cruel and unusual punishment.

## II. Jurisdiction and Standard of Review

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1343. We

3

exercise jurisdiction under 28 U.S.C. § 1291 over a final decision of a district court.

We exercise plenary review over a district court's grant of summary judgment and review the facts in the light most favorable to the party against whom summary judgment was entered. See Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### III. Discussion

Reyes alleges that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment when Chinnici, acting under color of state law, punched him on the shoulder and neck area while he was handcuffed. He claims that the District Court improperly imposed its own judgment regarding the merits of his case, rather than allowing a jury to decide the issues. He argues that the District Court erred in two respects. First, Reyes claims the District Court erred in ruling that Chinnici's punch was an "understandable reaction" to Reyes' conduct. Second, Reyes claims that the District Court erred in focusing on the injury he suffered and by concluding that the injury was so "minor and temporary" that Chinnici could not have acted maliciously and sadistically.

A.      "Understandable Reaction"

4

"In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Brooks, 204 F.3d at 106 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Courts looks to several factors in making this determination including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response." Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Contrary to Reyes' claim that the District Court avoided a material dispute on the degree of force used, the District Court viewed the evidence in the light most favorable to Reyes, stating that "[p]laintiff alleges that ... Defendant ... punched him on the shoulder and neck area while he was handcuffed." Opinion at 5. The Court then applied the above factors and concluded that Chinnici was entitled to judgment as a matter of law. The Court noted that: Reyes was a "security status" inmate; Reyes admitted to attempting to spit on Chinnici and provoked Chinnici by attempting to do so; Chinnici struck Reyes once, and not in the head or face; the purpose of Chinnici's reaction was to avoid being spit on; and the resulting injury was minor and temporary. While the District Court did not note this fact, the corrections officers then immediately placed Reyes back in his cell without further incident.

Reyes claims that he did not actually spit on Chinnici and a reasonable jury could

5

conclude that he did not present a threat or security risk to Chinnici or the other officers; however, the District Court specifically stated that "Plaintiff does not suggest what appropriate alternative response was available to Defendant under the circumstances." Opinion at 8. The Court added that "[i]t certainly is unreasonable and would undermine institutional discipline to expect a corrections officer to simply allow himself to be spit upon." Id.

Reyes further focuses on the fact that each of the three officers deposed in this case admitted that punching a handcuffed prisoner can never be an acceptable use of force. This argument is not persuasive, as the District Court correctly noted, because regardless of whether Chinnici's action was appropriate, "there is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Brooks, 204 F.3d at 107 (quoting Hudson, 503 U.S. at 9-10). A single punch to avoid being spit upon is not the sort of action that is "repugnant to the conscience of mankind."

B.    Injury

Reyes also claims that the District Court erred by taking into account the degree of his injury in granting summary judgment. The District Court noted, after analyzing the relevant five factors noted in Brooks, which include the extent of injury inflicted, that "we recognize that the de minimis nature of Plaintiff's does not itself foreclose this claim. However, Plaintiff has offered no evidence that would support a reasonable inference that Defendant unnecessarily and wantonly inflicted pain on him or that Defendant acted

6

maliciously or sadistically to cause him harm." Opinion at 7.

Reyes relies on a recent case authored by this Court, Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002), as support for his position that while the extent of injuries can be considered in evaluating the force used, the appropriateness of that force is a factual question for a jury to decide. Specifically, this Court stated:

> We do not, of course, suggest that a fact finder could not consider the de minimis nature of injuries along with all of the other circumstances in concluding that the force that was employed could not have risen to the level required for an Eighth Amendment violation. A properly instructed fact finder could, after considering all of the evidence, conclude that Smith's injuries were so minor that the defendants' account of the incident is more credible than Smith's, and/or that the force used was not of constitutional dimension. That may have been exactly what the district court did here. However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide.

Id. at 649. Smith involved allegations by a prisoner that he was handcuffed, brought to a Unit Manager's Office, and then beaten by numerous corrections officers. Smith alleged that the officers rammed his head into walls and cabinets, knocked him to the floor, and then kicked and punched him while he lay on the floor. One officer allegedly then dragged Smith to his feet, pushed him against a wall, punched him in the stomach, and choked him. Smith claimed he was subjected to a further beating on a bench located in his cell block. He alleged that, as a result of the beatings, his head was bleeding and he had pain in his ribs, ears, and right eye. Id. at 644.

In contrast to the terrible beating alleged by Smith, Reyes alleges that Chinnici punched him once. While this Court determined in the Smith opinion that a fact finder

7

must decide whether the degree of force used in that case reached constitutional dimensions, the basis for the grant of summary judgment in that case differed from the reasoning of the District Court in this case. In <u>Smith</u>, the district court "focused exclusively on the severity of Smith's injuries in denying his claim," despite the plaintiff's allegations of a vicious beating. <u>Id.</u> at 647. In this case, the District Court considered Reyes' allegation that he was punched ***and*** the severity of his injuries, as well as all of the other relevant factors required under <u>Brooks</u> and <u>Hudson</u>, in reaching its conclusion. In <u>Smith</u>, this Court indicated that the district court could not discount the plaintiff's allegations of the beatings he suffered by focusing on his injuries, and concluded that only a jury could determine whether the plaintiff's allegations were credible given the apparent lack of injuries. The District Court in this case concluded that even if a jury found Reyes' allegations to be credible, given the totality of the circumstances, no jury could find that the force used rose to the level of a constitutional dimension.

There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically. According to the Supreme Court, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Hudson v. McMillian</u> 503 U.S. 1, 10 (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")). We decline to establish a rigid rule establishing at what point the force used by a corrections officer rises to constitutional

8

dimensions; however, we hold that, given the facts of this case, Chinnici's actions were not "repugnant to the conscience of mankind" and did not violate Reyes' Eighth Amendment right to be free from cruel and unusual punishment.

## IV. Conclusion

Accordingly, for the reasons stated above, we affirm the judgment of the District Court.

_____

TO THE CLERK OF THE COURT:

9

Kindly file the foregoing Opinion.

 /s/ Julio M. Fuentes
Circuit Judge