**ALD-195**        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-1158

———————

MICHAEL LEE AUSTIN,
Appellant

v.

FRANKLIN J. TENNIS, In His Individual Capacity Only;
LIEUTENANT GRASMIRRE; C.O. LACHAT;
C.O. SPOTTS; KEVIN BURKE, In His Individual Capacity Only; JOHN K. WALMER,
In His Individual Capacity Only; PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; PRISON HEALTH SERVICES;
RICHARD ELLERS; In His Individual Capacity Only; JOEL DICKSON

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 07-cv-1693)
District Judge: Honorable John E. Jones

———————

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 13, 2010

Before: SLOVITER, AMBRO and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 26, 2010)

———————

OPINION

———————

PER CURIAM

       Appellant Michael Lee Austin, a state prisoner proceeding pro se, appeals from a

judgment entered by the District Court in favor of the Defendants. For the reasons set forth below, we will summarily affirm. See I.O.P. 10.6.

I.

Austin is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") who, during the relevant time, was incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview").[1] In March 2008, Austin filed an amended complaint pursuant 42 U.S.C. §1983 against the DOC; Franklin Tennis, Superintendent at SCI-Rockview; Richard Ellers, Medical Administrator at SCI-Rockview; Dr. John Walmer, psychologist at SCI-Rockview; C.O. Robert Grasmyer; C.O. Christopher Lachat; C.O. Michael Spotts, and Joel Dickson, Deputy Secretary for Security at SCI-Rockview ("the Commonwealth Defendants"); Prison Health Services, Inc. ("PHS"); and Dr. Kevin Burke, an employee of MHM Correctional Services, Inc.

In his amended complaint, Austin alleged that at various times during 2006 and 2007, the Defendants violated state law as well as his rights under the Eighth Amendment when they: (1) denied him medical care during a hunger strike; (2) transferred him to a "conduit cell" without regard to his psychological condition; (3) employed excessive force during a cell extraction; and 4) denied him advanced medical testing after his alleged exposure to asbestos.

In March 2009, the District Court granted in part and denied in part, a motion to

---

[1]Austin is currently incarcerated at the State Correctional Institution at Cresson.

dismiss filed by the Commonwealth Defendants. The District Court also granted a motion to dismiss filed by PHS, but denied Dr. Burke's. Following discovery, the Commonwealth Defendants as well as Dr. Burke moved for summary judgment on Austin's remaining claims. In a December 2009 decision, the District Court granted both motions and entered final judgment in the case. Austin filed a timely appeal.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the District Court's dismissals for failure to state a claim is plenary. Port Auth. of N.Y. and N. J. v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

We review a District Court's grant of summary judgment de novo. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). Summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). If a moving party demonstrates that no

3

genuine issue of material fact exists, the non-moving party must set forth specific facts showing a genuine material issue for trial and may not rest upon the mere allegations or denials of its pleadings. Connors v. Fawn Mining Corp., 30 F.3d 483, 489 (3d Cir. 1994). We may affirm on any ground supported by the record. See, e.g., Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). After reviewing the record on appeal and the District Court's thorough decisions, we conclude that the District Court committed no reversible error in disposing of Austin's claims.

Defendants' Motions to Dismiss

First, the District Court correctly dismissed PHS as well as the DOC from the action. With regard to the DOC, the District Court properly determined that the Eleventh Amendment bars claims for damages against the DOC, a state agency that did not waive its sovereign immunity. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). Although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983, the federal law under which Austin proceeds. See Quern v. Jordan, 440 U.S. 332, 345 (1979).

The District Court also properly dismissed PHS from the action. In his amended complaint, Austin failed to allege that PHS had any direct involvement in the alleged wrongful conduct. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The District Court also properly dismissed Austin's claim that the Defendants were deliberately indifferent to his need for advanced medical testing in light of his alleged

4

exposure to asbestos. Specifically, Austin alleged that around July 2006, after developing "respiratory problems," he requested medical testing to screen him for asbestos-related illnesses because he believed that he had been exposed to asbestos through the prison's ventilation system. (Am. Compl. at 4-5.) In the amended complaint, Austin did not provide a basis for his belief that he had been exposed to asbestos nor did he plead any facts suggesting that the Defendants knew about the existence of asbestos in the area where he was housed.

Pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment, prison officials are required to provide basic medical treatment to inmates. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order for a prisoner to state a claim under section 1983 for medical mistreatment or the denial of medical care, he must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference." Rouse, 182 F.3d at 197. Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F. 2d 573, 575 n.2 (3d Cir. 1979).

Austin failed to allege any specific acts of deliberate indifference on the part of the

Defendants. He did not claim that prison officials refused to treat the respiratory problems that he allegedly developed in 2006, only that they denied his request for additional testing for asbestos exposure based upon his unsubstantiated belief that he had been exposed to asbestos while in his cell. As a result, we conclude that Austin simply failed to allege that prison officials acted with a sufficiently culpable state of mind to survive Defendants' motion to dismiss.

Defendants' Motions for Summary Judgment

Deliberate Indifference to Austin's Psychological Need

As a result of Austin's mental state on March 5, 2007, prison officials placed him in an observation cell. Austin claims that the particular observation cell where he was housed contained a dangerous "conduit pole." (Am. Compl. at 5.) At some point during that day, Austin formed a noose with a sheet and attempted to attach the noose to the conduit pole. Prison staff observed, via camera, Austin's actions and immediately removed him from the cell. Austin alleges that the decision to place him in a cell with such a conduit pole, despite being aware of his deteriorated mental state, suggests that the Defendants were deliberately indifferent to his serious psychological condition.[2]

The record reflects, however, that Austin was placed in the observation cell *because* of his mental state. He was observed at all times by prison officials and removed

---

[2]Austin asserted this claim against Dr. Burke as well as the Commonwealth Defendants.

6

from the cell when he was observed trying to tie the sheet to the pole. The record further reflects that even though prison officials deemed the cell safe because of their ability to observe an inmate occupying that cell via camera, a plan was nevertheless developed to re-construct the cell so that the conduit pole would no longer be exposed.

In light of these facts, we agree with the District Court that there is an insufficient evidentiary basis upon which a reasonable jury could conclude that the Defendants acted with deliberate indifference to Austin's psychological condition.[3] As a result of his condition on March 5th, Austin was placed in a cell in a which was monitored in order to ensure his safety. Because of the effectiveness of the monitoring, prison officials were immediately able to thwart Austin's attempt to harm himself. Summary judgment was therefore appropriate.

### Denial of Medical Care During Austin's Hunger Strike

The District Court also properly granted summary judgment on Austin's claim that the Commonwealth Defendants denied him proper medical care during a hunger strike, in violation of his constitutional rights. The record reveals that Austin began refusing food on March 7, 2007 and continued to do so through March 14, 2007. The record further reflects that during that time Austin was offered three meals a day and that officials observed him in his cell. From March 8th through March 10th, Austin refused any medical

------

[3] With regard to Dr. Burke, there is no evidence that he even had the authority to authorize Austin's placement in that particular cell.

7

treatment. On March 11th, Austin accepted medical treatment. The following day, prison officials removed Austin from his cell, allowed him to be checked by medical personnel, and placed him in an observation unit. When he refused meals on March 14th, the DOC Office of Chief Counsel filed a complaint and motion for preliminary injunction in the Court of Common Pleas in Centre County, Pennsylvania requesting that the DOC be allowed to involuntarily examine Austin, perform diagnostic tests, and administer psychological treatment as necessary. That same day, the court signed the order, which was subsequently read to Austin. Thereafter, Austin ate a full meal, and he began to consume food regularly again.

Based on those facts, we agree with the District Court that there was no basis to conclude that the Commonwealth Defendants were deliberately indifferent to Austin's medical needs throughout the course of his self-imposed hunger strike. Austin was repeatedly offered meals and refused them. He was additionally monitored and prison officials petitioned a court to extensively treat Austin, without his consent, once his hunger strike became prolonged.

### Excessive Use of Force

Lastly, Austin claimed that during his cell extraction on March 12, 2007 (during the period of his hunger strike), prison officials used unnecessary force to effectuate his removal.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly

inflicting pain in a manner that offends contemporary standards of decency.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  When reviewing Eighth Amendment excessive force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  Whether the force applied was excessive requires the examination of several factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 465 U.S. 312, 321 (1986)).  Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force."  Id. at 104.

Austin alleged in his amended complaint that on March 12th Defendants Lachat, Spotts and Grasmyer "bent him down in an 90 degree angle, where [his] head was literally in his 'genitalia,' where each officer had a grip on an arm and the back of plaintiff's jumpsuit."  (Am. Compl. at 9-10.)  He  additionally alleged that he was forced to walk a long distance while in leg irons and cuffs and that he went unconscious before

9

entering the treatment building, but that upon arrival, a nurse provided him with an ammonia salt packet to inhale. (Id.) Austin did not allege that he suffered any injury during the extraction or that he was refused medical treatment. As mentioned, the purpose of the cell extraction was to evaluate Austin as a result of his self-imposed hunger strike.

We agree with the District Court that Austin failed to allege any facts, or present any evidence, that would establish that the Defendants used excessive force in removing him from the cell. Specifically, he did not offer any evidence contradicting the District Court's viewing of the video of the cell extraction, provided by the DOC, which showed that Austin was non-combative and that the Defendants used only the amount of force necessary to transport Austin to a treatment building for evaluation. Because there was no basis upon which a reasonable jury could conclude that Defendants used excessive force in removing Austin from his cell, we will affirm the District Court's summary judgment ruling.[4]

As Austin's appeal presents no substantial question, we will summarily affirm. See Third Cir. LAR 27.4; I.O.P. 10.6. Austin's motion for appointment of counsel is denied.

_____

[4]We also conclude that the District Court acted within its discretion in refraining from exercising supplemental jurisdiction over Austin's state law claims. See 28 U.S.C. § 1367(c) (" The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if the district court has dismissed all claims over which it has original jurisdiction.")