GLD-082                                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1917
_____

JAMES R. ANDERSON,
                                        Appellant

v.

SUPERINTENDENT DAVID DIGUGLIELMO;
SGT. PAULIN, *Correction Sergeant*;
C.O. HANNIBAL, *Correction Officer*;
CAPTAIN STRICKLAND, *Correction Captain*;
PRISON HEALTH SERVICES;
DR. FELIPE A. ARIAS, *Medical Director*;
SUE FINDLEY, *Nurse*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 06-cv-02798)
District Judge:  Honorable Edmund V. Ludwig

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 6, 2011
Before:  AMBRO, CHAGARES AND NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 20, 2011)
_____

OPINION
_____

PER CURIAM

James Anderson, proceeding <u>pro</u> <u>se</u>, appeals from the District Court's order

granting Defendants' motions for summary judgment. For the reasons that follow, we will affirm the District Court's judgment.

The record reflects that on May 10, 2005, around 11:00 p.m., Anderson, a prisoner at the State Correctional Institution in Graterford, Pennsylvania, suffered a severe headache. He informed Officer Randall of his severe headache when she passed his cell while conducting inmate count, around 11:10 p.m. Around 11:15 p.m., Randall called Nurse Findley, and informed her of Anderson's complaints, and Findley instructed Randall to bring him to the dispensary. Randall also relayed this information to the Operations Sergeant, Paulin, who told her he would escort Anderson to the dispensary after count. This decision was approved by Strickland. Randall checked on Anderson again, around 11:20 p.m. Shortly after Randall left, Anderson began to vomit; he grabbed his boot and banged on his cell windows, breaking them, in order to get some help. Paulin and Officer Hannibal ordered Anderson to lie on the floor as they entered his cell. They handcuffed him, cleaned him off, carried him down a stairway, placed him in wheeled trash cart to move him down the cell block, then carried him up a stairway to be placed in a wheelchair.[1] Anderson arrived at the dispensary around 12:05 a.m.

Findley assessed Anderson. She found him alert and oriented, complaining of severe headache and vomiting. Findley advised Dr. Arias, the on-call physician, that Anderson's blood pressure was elevated, around 12:20 a.m. Based on Findley's assessment, Arias prescribed medications for Anderson's nausea, pain, and elevated blood pressure. At 12:40 a.m., Findley contacted Arias again to inform him that the

2

medication had not kicked in, and he told her to continue treatment; Anderson was admitted to the infirmary[2] around 1:30 a.m. When Arias arrived at the prison on May 11, 2010, he examined Anderson. He noted neurological symptoms and had Anderson transferred to Temple University Hospital at 8:30 a.m. Anderson was treated there for a subarachnoid hemorrhage. He was discharged on May 16, 2006, and has fully recovered.[3]

In this civil rights action, Anderson alleges that: (1) Paulin and Hannibal used excessive force in transporting him from his cell to the wheelchair and were deliberately indifferent to his medical needs by ignoring his cries of pain and intentionally delaying his access to medical care by failing to transport him to the infirmary in a timely manner, due, in part, to the inmate count; (2) Superintendent Digugielmo and Strickland deliberately and indifferently delayed his access to adequate medical treatment due to policies and procedures of prohibiting movement of a prisoner during inmate count, instituted by Diguglielmo and enforced by Strickland; (3) Findley was deliberately indifferent to his medical needs and delayed his medical treatment by refusing to order that Anderson be taken immediately to the prison infirmary or that he be transferred to an outside medical facility; (4) Arias was deliberately indifferent to his medical needs and

---

[1] Anderson weighed nearly 200 pounds.
[2] Findley testified that the dispensary acts as a mini-emergency room, where the patient is assessed, while the infirmary is an inpatient unit with 25 beds.

[3] When he began to vomit, Anderson began to drift in and out of consciousness. He concedes that he does not know what happened from the time he was lying on the floor of his cell until he was at Temple University Hospital.

delayed his medical treatment by refusing to transfer him to an outside medical facility; and (5) Prison Health Systems ("PHS"), through its training and policies of prohibiting transfer of an inmate to an outside facility without the approval of PHS's medical director, was deliberately indifferent to his medical needs by failing to provide adequate medical treatment in a timely manner. Defendants ultimately filed motions for summary judgment, which were granted.[4] Anderson filed a timely appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. Beers-Capitol v. Whetzel, 256 F.3d 120, 130 & n.6 (3d Cir. 2001). Summary judgment is granted when "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We will view the facts in the light most favorable to the nonmoving party. Whetzel, 256 F.3d at 130 n.6.

A.     Deliberate Indifference

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate (1) that defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

---

[4] By Order enter October 30, 2008, the District Court dismissed Anderson's negligence claims against Findley and Arias because Anderson failed to file

4

We have found deliberate indifference where the prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment based on a non-medical reason, or prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Claims of medical malpractice do not constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [, which] remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). A non-medical prison official cannot be charged with deliberate indifference as to medical treatment absent a reason to believe that prison medical authorities are mistreating or failing to treat a prisoner. Spruill, 372 F.3d at 236. Here, as the District Court correctly concluded, none of the defendants acted with deliberate indifference towards Anderson's serious medical needs.

As soon as Randall was informed of Anderson's headache, she contacted Findley, who advised that Anderson be sent to the dispensary; Findley did not state that Anderson required immediate attention. Paulin and Hannibal did not delay Anderson's access to medical care, as they attended to Anderson when he began to smash his cell windows, regardless of the inmate count, and brought him to the dispensary within an hour of his

---

a Certificate of Merit in accordance with Pa. R. Civ. P. 1042.3.

initial complaint to Randall, in reliance on Findley's assessment that Anderson's severe headache was not an emergency. The record shows that the policy and procedures did permit movement of a prisoner during the inmate count if there was a life threatening emergency.[5] Anderson's complaints of severe headache, however, did not qualify as a life threatening medical emergency.

Based on the information initially given to her by Officer Randall, regarding Anderson's complaints of severe headache, Findley was not deliberately indifferent to Anderson's medical needs for failing to order that he be immediately taken to the prison infirmary, nor did she disregard an excessive risk to his health because she did not order that he be transferred to an outside medical facility. Arias was not deliberately indifferent to Anderson's medical needs, as he ordered that Anderson be transferred to Temple University Hospital as soon as he observed a possible neurological problem. The record shows that Findley could have transferred Anderson to an outside medical facility without the approval of PHS's medical director.[6]

B.    Excessive Force

In reviewing an excessive force claim, we must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[5] Diguglielmo, Paulin, and Strickland testified to this policy. No evidence was presented to contradict their testimony.

[6] Findley testified that she can and has transferred inmates to outside medical facilities without the approval of a physician in an emergency situation, which was supported by Arias' testimony. No evidence was presented to contradict their testimony.

sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In determining whether excessive force was used, we look to several factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

We agree with the District Court that handcuffing Anderson was not unreasonable because Anderson had broken several windows. The officers' decision to place the nearly 200 pound Anderson, who was drifting in and out of consciousness, in a wheeled trash cart to transport him to the wheelchair that took him to the dispensary also was not unreasonable under the circumstances. There was no evidence that Anderson was harmed as a result of the method by which he was transported from his cell to the dispensary.

After reviewing the District Court pleadings and considering the arguments raised in Anderson's informal brief, we conclude that the District Court properly granted defendants' motions for summary judgment. Accordingly, we will affirm the District Court's order.[7]

---

[7] Anderson's motion to proceed on the original record is granted.