**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1243
_____

DE SHAWN DRUMGO,
　　　　　　　　　　　Appellant

v.

CPL. REGINALD BROWN; SGT. THOMPSON; SGT. JAMES THOMAS; LT.
STEVENSON; STAFF LT. KAREN HAWKINS; COUNSELOR RON HOSTERMAN;
BETTY BRIAN, CMS Service; DEPUTY PIERCE; WARDEN PERRY PHELPS; LT.
THOMAS SEACORD; SGT. MICHAEL MAANS

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Civil Action No. 08-cv-00592)
District Judge:  Honorable Jerome B. Simandle

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2013
Before:  AMBRO, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed:  May 24, 2013)
_____

OPINION
_____

PER CURIAM

　　　　De-Shawn Drumgo, a Delaware state prisoner proceeding pro se, appeals an order

of the United States District Court for the District of Delaware granting summary

judgment for the defendants in his civil rights action. For the reasons below, we will vacate the judgment of the District Court in part and remand for further proceedings.

The record reflects that on September 27, 2007, Corporal Reginald Brown went to the James T. Vaughn Correctional Center Security Housing Unit to transport Drumgo, a pre-trial detainee, to court. For security reasons, prisoners may not wear layers of clothing when being transported. Officer Brown told Drumgo that he could not wear the thermal shirt he had on under his prison jumpsuit. The parties dispute what happened next.

According to Drumgo, he asked to speak with a lieutenant because it was 48 degrees outside. He states in his declaration that Brown reiterated that he could not wear his shirt and began shaking a can of pepper spray. Drumgo says he told Brown that he has asthma and that he would not be able to breathe if sprayed. Brown then pointed the pepper spray can at him and Drumgo ducked. Brown tackled and punched Drumgo and other officers were alerted. Drumgo says he stated that he was not resisting, but Lieutenant Stevenson and Corporals Thompson, Stiles, and Alexander sprayed their pepper spray, caused him to fall by pulling on the chain to his leg shackles, and kicked and stomped him. He says he was punched in the back of the head with handcuffs used as brass knuckles. Drumgo states that he was still handcuffed and covered in pepper spray, that he was not taken to the infirmary, and that he was kept from court to prevent anyone from seeing a black eye and other injuries. Drumgo states that he suffers from headaches, back pain, and numbness in his jaw and lip as a result of the beating.

2

Inmate Kevin Cuff, who was also scheduled to be transported, witnessed the incident. Cuff also states in his declaration that Drumgo asked to speak to a lieutenant about wearing a thermal shirt, that Brown shook his mace can, that Drumgo yelled that he had asthma and would not be able to breathe if sprayed, and that Brown then pointed his mace at Drumgo.[1] Cuff attests that Drumgo tried to use his hands, which were handcuffed, to shield his face from being maced. He states that Brown's mace fell to the ground and Brown then began striking Drumgo's head or face. Cuff says that Brown tackled Drumgo and that Brown and other officers continued to beat him even though he never resisted. Cuff states that Brown held Drumgo while officers punched him in the head using handcuffs as brass knuckles. Inmate Frederick Kaymore provided a similar statement. Cuff and Kaymore state that they thought the officers were trying to kill Drumgo.

Corporal Brown, however, attests that Drumgo was ordered to remove his thermal shirt and he refused. Brown states that Drumgo moved toward him swinging his arms, that he retrieved his can of pepper spray, and that Drumgo struck him across his temple and knocked his pepper spray can to the floor. Brown says that he tried to restrain Drumgo, who continued to swing his arms and grab him, and they landed on the floor. Brown states that Corporals Alexander and Thompson helped him try to subdue Drumgo, who resisted, and that Drumgo was ultimately handcuffed with the help of Lieutenant

---

[1] Although Cuff describes Brown's can as mace, the record reflects that Brown carried pepper spray.

3

Stevenson. Brown denies that he or the other officers used restraining equipment to cause Drumgo pain. He states that medical staff examined Drumgo after the incident.

Corporal Debra Stiles, who was assigned to transport another inmate, also witnessed the incident. She states in her declaration that Drumgo refused orders to remove his shirt, that Brown reached for his pepper spray, and that Drumgo then swung and hit Brown. She says that she gave her pepper spray to Alexander to use on Drumgo, who resisted control until he was sprayed and restrained by Brown, Alexander, and Thompson. Lieutenant Stevenson also submitted a declaration stating that Drumgo resisted efforts to subdue him, that he grabbed his arm to gain control of him, and that restraining equipment was not used to cause him pain.

Corporals Alexander, Thompson, and Stiles prepared incident reports reflecting that Drumgo started the altercation and that the officers used force to restrain him. At the related disciplinary hearing, Drumgo was found guilty of disorderly and threatening behavior and failing to obey an order. Assault charges were dismissed. The disciplinary decision reflects that Drumgo stated that he might have swung at Brown's mace can, but he denied swinging at Brown.

Drumgo filed a complaint in District Court pursuant to 42 U.S.C. § 1983 claiming that Brown, Thompson, and Stevenson used excessive force against him.[2] In granting

---

[2]Drumgo also alleged in his complaint that after the altercation prison officers tampered with his food, denied him access to the courts, and denied him his right to free exercise of his religion, but he does not pursue these claims on appeal.

4

summary judgment for the officers, the District Court found that the use of force was in response to a threat to the safety of staff and inmates and was done in a good faith effort to maintain or restore discipline. The District Court found that Drumgo was at least non-compliant, that the officers took action after he disobeyed orders and acted aggressively, and that the officers' actions must be afforded substantial latitude. The District Court also noted that Drumgo had not produced evidence of a discernible injury. Drumgo moved for reconsideration and his motion was denied. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review is plenary. Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000).

As recognized by the District Court, Eighth Amendment cruel and unusual punishment standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance. Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000). The applicable test under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Relevant factors include: (1) the need for force, (2) the relationship between the need and the amount of force used, (3) the extent of injury, (4) the extent of the threat to safety as reasonably perceived by officials, and (5) "'any efforts made to temper the severity of a forceful response.'" Brooks, 204 F.3d at 106 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

As discussed above, Drumgo's declaration and witness statements reflect that he asked to speak to a lieutenant, that he reacted to the threat of pepper spray, that the

5

officers beat him while he was handcuffed and/or shackled on the floor, and that he did not resist. Although the officers present a different account of the incident, summary judgment is not appropriate if "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).

We agree with Drumgo's contention on appeal that there is a genuine issue of material fact as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The evidence relied upon by the District Court, including Drumgo's statement at his disciplinary hearing that he might have swung at the pepper spray can and a note in a medical record that he said he had assaulted a correctional officer, may raise questions about Drumgo's version of the events, but his credibility is a question for the fact finder. The District Court also relied on a handwritten medical note stating that Drumgo denied any pain when examined on September 27, 2007, and that no bleeding, swelling, or discoloration was observed. Assuming its admissibility, the note is one piece of evidence for the fact finder's consideration. See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (explaining de minimis nature of injuries may cast doubt on prisoner's account of the incident but that is an issue of fact to be resolved by the fact finder based on all of the

6

evidence).  We thus conclude that summary judgment was not warranted on Drumgo's

excessive force claim.[3]

Accordingly, we will vacate the District Court's order to the extent the District

Court granted summary judgment in favor of the officers on Drumgo's excessive force

claim and remand for further proceedings.[4]

---

[3]Drumgo also appeals an order rejecting his contention that the defendants had not
adequately responded to his discovery requests.  Drumgo has not shown that the District
Court abused its discretion.  Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1310
(3d Cir. 1995).  To the extent Drumgo appeals the denial of his motion for appointment
of counsel, we also find no error in the District Court's ruling.

[4] Judge Hardiman would affirm the judgment of the District Court.