**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2260
_____

ANTHONY E. PROCTOR, in his official capacity,
Appellant

v.

SGT. BURKE, Captain, in his official capacity; C.O. HART, in his official capacity;
CAPT. BEYERS, in his official capacity; HEARING EXAMINER P. MCKISSOCK, in
his official capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-13-cv-01284)
Magistrate Judge Honorable Cynthia R. Eddy

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
November 5, 2015
Before:  FUENTES, KRAUSE and SCIRICA, Circuit Judges

(Opinion filed: November 10, 2015)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Anthony E. Proctor appeals from the judgment of the United States District Court for the Western District of Pennsylvania in his civil rights case. As the appeal does not present a substantial question, we will summarily affirm the decision of the District Court.

I.

Anthony E. Proctor is a state prisoner, in the custody of the Pennsylvania Department of Corrections and previously incarcerated at SCI-Mercer. Proctor assaulted an inmate, Kevin Davis, in order to defend another inmate's honor, and refused to talk to a guard about the incident. Subsequently, he tried to enter a yard without authorization and was told to leave. During his next attempt to enter the same yard, Proctor was ordered to submit to a pat search. He refused to do so and resisted. He was handcuffed and forced to the ground. Because Proctor refused to walk, guards carried and then drove him from that location to the Restricted Housing Unit ("RHU"). At the RHU, Proctor refused to allow a prison guard to photograph his hands. The prison filed two misconduct reports against Proctor, and he was subject to disciplinary hearings.

Proctor filed an amended complaint against Sergeant Burke, Correctional Officer Hart, Captain Byers, and Hearing Examiner P. McKissock,[1] proceeding under 42 U.S.C. § 1983. Proctor alleged that: (1) Sergeant Burke and C.O. Hart used excessive force against him; (2) they and Captain Byers retaliated against him for asserting his due process rights and exercising his Fifth Amendment right to be free from self-

_____

[1] Hearing Examiner P. McKissock was referred to as both the "hearing examiner" and "HEX" in the record below.

2

incrimination; and (3) Hearing Examiner McKissock violated his procedural due process rights under the Fourteenth Amendment. Proctor asked for $1,200,000 in compensatory and punitive damages, "a life-time of full medical coverage from a medical provider chosen by the Plaintiff," and $100,000 to educate himself. After discovery closed, the Court found that Proctor had not adduced evidence sufficient to create a genuine issue of fact on any of his claims, and granted summary judgment in favor of the defendants.[2]

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment.[3] See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). A district court may grant summary judgment only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this analysis, a district court must credit the evidence of the non-moving party, and draw all justifiable inferences in the non-movant's party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A mere "scintilla of evidence in support of the [non-moving party]'s position will be insufficient" to create a genuine issue of fact. Id. at 252. The non-moving party "must show where in the record there exists a genuine dispute over a material fact." See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007). The

---

[2] The parties consented to have the case heard by a magistrate judge, pursuant to 28 U.S.C. § 636(c)(1).

[3] We may summarily affirm a decision of the District Court if the appeal does not raise a substantial issue. 3d Cir. LAR 27.4; I.O.P. 10.6.

3

non-moving party cannot rest on his complaint or answer, but must point to affidavits, depositions, interrogatory answers, and/or any admissions in establishing that there are material, disputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## A. Retaliation Claims

The District Court correctly entered summary judgment on Proctor's retaliation claims because at a minimum, he did not provide evidence to establish that the disciplinary actions taken against him were for invoking his due process rights and right against self-incrimination. In order to succeed in a retaliation claim, a plaintiff must establish three elements. First, he must demonstrate that his conduct was constitutionally protected. Then, he must show retaliatory action "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]'" Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Finally, he must establish a causal link between his constitutionally protected conduct and the adverse action taken against him. Id. In the prison context, the plaintiff has the "initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Id. If the plaintiff meets this burden, it shifts to the defendants to prove, by a preponderance of the evidence, that they would have taken the same action absent the protected activity. Id. When prison disciplinary hearings are used to retaliate against prisoners for their exercise of a constitutional right, such proceedings can violate due process. See Mitchell v. Horn, 318 F.3d 523, 530-31 (3d Cir. 2003) (quoting Mensinger, 229 F.3d at 653)).

Proctor alleged that he invoked his Fifth Amendment right against self-incrimination in response to questioning by Defendant Burke about his assault of Kevin Davis. Proctor also alleged that Captain Byers ordered Proctor to submit to having his hands photographed, and that Proctor invoked his right against self-incrimination in response. He alleged that the pat search and the disciplinary hearings were retaliatory actions taken for exercising his Fifth Amendment right. He also argued that the misconduct charges, the disciplinary hearings, and his RHU placement were retaliatory actions taken for his demands for due process.

The defendants filed several declarations and official reports in support of their motion for summary judgment. Defendant Charles Hart's declaration stated that "[p]at searches are randomly conducted throughout the prison to maintain discipline and ensure the safety and security of other inmates and staff." Dist. Ct. dkt. # 24-3, ¶ 6. Hart stated that Proctor refused to submit to the pat search, and the other exhibits that the defendants submitted state the same. The defendants pointed to this evidence to show that the misconduct charges were properly filed, as Proctor refused to follow orders, verbally abused the officers, and again refused orders at the RHU. The defendants also cited to the record to demonstrate that the core elements of due process were followed.

The only evidence that Proctor submitted to defend against the defendants' evidence was an "Affidavit of Confession, Pre-Trial Narrative, in Part, In Argument Diagram Form, In part, Venn Diagram Form, in Part, Deductively Valid Conditional

Arguments" (hereafter "Affidavit").[4] Proctor's Affidavit is a mix of narrative and argumentation, but we will treat the factual assertions as if filed in an affidavit, as Proctor swore them under oath.[5] In the Affidavit, Proctor does not state that he submitted to the pat search, although he states the attempt was a pretext for an investigation, because he assaulted Kevin Davis and then refused to answer questions. The District Court stated that there was no evidence that Proctor had assaulted the other inmate, but Proctor's own Affidavit is evidence that he did. See Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000). However, nothing in the Affidavit itself or otherwise found in the record demonstrates that the attempted pat search was the result of a retaliatory motive. In fact, viewing the record in the light most favorable to Proctor, any pat searches of Proctor appear entirely appropriate.

With regards to the disciplinary hearings, there is also insufficient record evidence to establish that they were retaliatory actions. Proctor refused to follow two orders and was properly disciplined for the failure to do so. He was, in fact, found guilty of threatening an employee, using abusive language to an employee, and twice refusing to obey an order. Even if Proctor is correct that he was being retaliated against, the defendants have adequately shown that the attempted pat search and the hearings would have occurred regardless of Proctor's refusal to answer questions or have his hands photographed. As such, the defendants were entitled to summary judgment.

---

[4] Often, prisoners may only have their own affidavits due to the practical difficulties of investigating from behind bars. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993); see also Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000).

[5] See Hurd v. Williams, 755 F.2d 306, 308 (3d Cir. 1985) (treating similar, pro se filed documents similarly).

B. Eighth Amendment Claim

The District Court correctly entered summary judgment on Proctor's Eighth Amendment claim because he did not provide evidence to establish that the force that was used against him was maliciously and sadistically intended to cause harm. The unnecessary and wanton infliction of pain is considered cruel and unusual punishment under the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 6 (1992). When evaluating excessive force claims, the key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In making this inquiry, courts examine a number of factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of a forceful response." Brooks, 204 F.3d at 106. De minimis injuries may suffice to state a claim for excessive force. Id. at 103.

The defendants provided evidence showing: (1) that there was a need for the application of force; (2) that the relationship between the need and the use of force was reasonable; (3) a lack of injuries inflicted; and (4) efforts to temper the severity of the forceful response. The declarations and reports that the defendants submitted show that Proctor failed to cooperate; that he issued verbal threats; and that he refused to walk. In Incident Report B 172125, which was admitted into evidence by both Proctor and the

7

defendants, Proctor threatened, "If I whipped one of you pigs asses, you would quit picking on a [expletive deleted.]"

Proctor does not deny that he issued threats, although he contends that a portion of the videotape has been suppressed. The video shows Proctor refusing to walk on his own and being carried by four officers. At the beginning of the video, he yells, "carry me." He repeats this several times over the course of the video. Dist. Ct. Dkt. # 24-8. He further yells, "Earn your fucking keep." He repeats that "you threw me down." In fact, he yells, "This is how I go now – this is how I go now – I go down with a fight, I'm not a pussy," in addition to a number of other inflammatory statements. The officers carrying him lower him to the ground twice, and do not throw him or slam him down. When placing him onto the cart, they do not drop him or shove his head into the cart. Proctor's medical records show only bruising to his chin. There is no indication in the record that this particular video has been suppressed, and the video file appears complete. In fact, Proctor's Affidavit again undercuts his case. Even crediting the facts in his affidavit, he has offered no evidence that the officers utilized excessive force. Indeed, they had reason to view him as a threat to inmate and staff safety if they knew he had assaulted another inmate. As such, the defendants were entitled to summary judgment.

### C. Fourteenth Amendment Due Process Claim

Finally, the District Court correctly entered summary judgment on Proctor's Fourteenth Amendment due process claim. When raising a procedural due process claim, a plaintiff must allege an injury to his life, liberty, or property. See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 421 (3d Cir. 2000). In analyzing these claims, courts

must determine whether the injury alleged is an injury within the meaning of the "life, liberty, or property" clause of the Fourteenth Amendment. See Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Regarding procedural fairness in prison proceedings, where a prisoner has the opportunity to have his case heard and to defend against "allegedly falsified evidence and groundless misconduct reports," due process is satisfied. Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). Similarly, confinement alone will not always violate a protected liberty interest. Id. at 654. Where the plaintiff is a prisoner, a state-created liberty interest can arise only when a prison's action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Proctor alleged that the prison filed false misconduct charges and conducted sham disciplinary hearings. He also alleged that his placement in the RHU was unjustified. He argued that the misconduct charges, the disciplinary hearings, and his RHU placement violated his due process rights.

Again, the defendants pointed to evidence contained in the declarations and the misconduct reports to show that the misconduct charges were properly filed, as Proctor refused to follow orders, verbally abused the officers, and again refused orders at the RHU. The defendants also cited to the record to demonstrate that the core elements of due process were followed, and that Proctor had the opportunity to have his case heard and defend himself. The defendants stated that because the misconduct reports were properly filed and the disciplinary hearings properly conducted, Proctor's placement in the RHU was appropriate. The record evidence illustrated that Proctor's placement in the

9

RHU did not appear to impose an atypical and significant hardship in relation to ordinary prison life.

Again, the only evidence that Proctor provided is contained in his Affidavit. His Affidavit provided no factual basis to think that the misconduct charges were misfiled, as Proctor admitted that he disobeyed an order from Captain Byers. Again, Proctor did not deny that he disobeyed the pat search. The failure to submit to the pat search, the manner in which he conducted himself in the video, and his admission that he disobeyed an order from Captain Byers adequately demonstrate the reasons for the misconduct charges and the disciplinary hearings. Proctor also provides no evidence to support his claim that his RHU placement imposed any atypical and significant hardship.

For the reasons stated above, we will summarily affirm the District Court's decision.